IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RYAN ERIC JACOB KENNEDY, #149113,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>TOM FOX; )<br>DEBRA HIPP; )<br>MARGARET GUSTWAITE; )<br>JEANNE ROBERTSON; AND )<br>YOLANDA BROWN, )<br>)<br>Defendants.  )<br>_____) | Civil Action No. 3:04-22945-GRA-JRM<br><br><br><br><br><br><br><br><br><br>REPORT AND RECOMMENDATION |

This action was filed by Plaintiff on November 19, 2004.[1]  At the time of the alleged actions he was a pretrial detainee at the J. Reuben Long Detention Center ("JRLDC") in Conway, South Carolina. On March 22, 2005, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on March 25, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on April 12, 2005.

DISCUSSION

Plaintiff was arrested on July 25, 2004, and transferred and subsequently detained at the JRLDC on July 26, 2004. He alleges that on July 29, 2004, he noticed a small bite on his left

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

collar bone and a small blister on his left hand, that he requested medical assistance, but was not treated until August 2, 2004. He was hospitalized at the Conway Medical Center from August 3 to 6, 2004, after which he returned to the JRLDC. Plaintiff was released from custody on August 10, 2004. Plaintiff alleges that he subsequently self-medicated himself with Motrin and liquor causing him to become addicted to alcohol and causing his subsequent arrest for alcohol related charges.

Plaintiff alleges that his constitutional rights were violated as to his medical treatment and conditions of confinement. Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to show that Defendants were deliberately indifferent to his medical needs; (2) Plaintiff fails to show a valid cause of action based on his allegations of deficient conditions of confinement; (3) Plaintiff cannot show that Defendants are liable under a theory of respondeat superior; (4) Defendants are entitled to Eleventh Amendment immunity in their official capacities; (5) Defendants are entitled to qualified immunity; (6) Plaintiff is not entitled to injunctive or declaratory relief; and (7) any state claims should be dismissed.

1.   Medical Claims

Plaintiff appears to allege that Defendants were deliberately indifferent to his medical needs concerning his hand and shoulder. Defendants argue that Plaintiff fails to show that they were deliberately indifferent to any of his serious medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton

infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[2]  The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).  Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

---

[2]Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983).  However, the inquiry as to whether officials were deliberately indifferent to serious medical needs is the same under both the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and a defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to his medical needs. Plaintiff's medical records reveal that he complained to the medical unit on the afternoon of July

4

29, 2004 about a red raised area on his left clavicle bone. On July 30, 2004, Plaintiff was examined for complaints concerning his clavicle area and hand. He was given Ibuprofen and the antibiotic Zithromax. Plaintiff was examined again on August 1, 2004. Defendant Debra Hipp ("Hipp"), a family nurse practitioner, observed an old injury with poor hygiene and states that Plaintiff had not received prior medical treatment for his hand. Keflex was prescribed. On August 2, 2004, Hipp examined Plaintiff and put him on a regime of the anti-bacterial drug Levaquin with increased initial dosages for ten days in addition to Keflex and Motrin. Daily nursing assessments with documentation of Plaintiff's blood pressure and temperature were ordered. On August 3, 2004, Hipp noted that Plaintiff showed a poor response to antibiotics and Plaintiff was transferred to Conway Medical Center where he was hospitalized until August 6, 2004. Cultures revealed that Plaintiff had Methicillin Resistant Staphylococcus Aureaus ("MRSA"). Plaintiff was monitored and further treated at JRLDC until his release from custody on August 10, 2004. At the time of his release, Plaintiff was advised to follow up with his family physician and was informed of a follow-up appointment scheduled for August 17, 2004. Plaintiff's Medical Records (Defendants' Ex. 1) and Hipp Aff.

To the extent that Plaintiff is alleging that Defendants were negligent or their actions constituted medical malpractice, his claims fail. Negligence, in general, is not actionable under 42 U.S.C. § 1983 or under the Bivens doctrine. See Daniels v. Williams, 474 U.S. 327, 328-336 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-348 (1986); and Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987). Further, 42 U.S.C. § 1983 and the Bivens doctrine do not impose liability for violations of duties of care arising under state law. See DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-203 (1989). Additionally,

5

medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

To the extent that Plaintiff's allegations concern his disagreement with the provided medical treatment, he fails to show a constitutional violation. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Marcher, 633 F. Supp. 351 , 353 (D.Kan. 1986). Although Plaintiff may believe that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

    2.    <u>Living Conditions</u>

Plaintiff alleges that his constitutional rights were violated based on his living conditions, including stagnant water, mold, and fungus in the showers; mold and fungus on cell walls; food trays with food stuck on them from previous meals; no hot water in the cells; having to sleep on the floor; crowded living conditions; and stagnant air due to no outside ventilation. He claims these conditions contributed to his staph infection. Defendants argue that Plaintiff fails to state a valid cause of action based on his conditions of confinement.

Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions. . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.

(Citations omitted). However, the due process rights of detainees are at least coextensive with Eighth Amendment rights of convicted prisoners, and perhaps greater. Whisenant v. Yuam, 739 F.2d 160 (4th Cir. 1984); Loe v. Armistead, 582 F.2d at 1292.

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Thus, it must be determined whether the conditions and/or treatment received by a plaintiff amounted to punishment. Absent a showing of expressed intent to punish on the part of correctional officials, the determination whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to a legitimate non-punitive purpose and whether it is excessive in relation to that purpose. Bell, 441 U.S. 538.

Joey Johnson, Deputy Director of the JRLDC, states that supervisory management at the JRLDC is aware of the potential for MRSA and takes steps to protect its spread, including instructing detainees to cover all wounds, clean their hands regularly, not share personal items, and consult with medical personnel if they suspect an infection; additional funds have been spent

7

on procuring chlorine cleaning mixes and materials for cell and common area/shower sanitation; if evidence of MRSA is found in a cell, the entire cell is decontaminated; washer and dryer units have been reconfigured to wash and dry long enough to kill any germs causing MRSA; and a special cleaning solution is utilized to clean counter tops, door handles, bunks, and other surfaces. Defendant Hipp noted that Plaintiff entered incarceration with an old hand injury which had not been treated properly. Johnson states that if the JRLDC has more detainees than beds in a cell, a detainee is given a mattress with sufficient bedding. Johnson also states that shower areas are cleaned on a daily basis, plumbers are on duty to deal with problems in the showers, and the JRLDC is well-ventilated.

Plaintiff fails to show any expressed intent on the part of Defendants to punish him concerning his living conditions at JRLDC. Further, Plaintiff fails to show that his living conditions caused him anything more than de minimis injuries. A de minimis injury does not violate the Fourteenth Amendment. See Ingraham, 430 U.S. at 674 ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); see also Riley v. Dorton, 115 F.3d 1159, 1167-1168 (4th Cir. 1997)(en banc)(any injury that the plaintiff suffered as a result of the alleged use of excessive force against him must have been de minimis at best because the plaintiff saw medical personnel on numerous occasions for various injuries and never mentioned the alleged constitutional violation as the source of any of his injuries or complaints), cert. denied, 520 U.S. 1030 (1997); Westmoreland v. Brown, 883 F. Supp. 67, 76 (E.D.Va. 1995)("a particular condition constitutes punishment only where it causes physical or mental injury").

3.      Grievances

Plaintiff alleges that he wrote a grievance to Defendant Fox, but the grievance was not answered.[3] He fails to show that his constitutional rights were violated concerning the grievance process. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

4.      Supervisory Liability

Defendants Fox, Gustwaite, Robertson, and Brown argue that they cannot be held liable on a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Fox, Gustwaite, Robertson, or Brown were personally responsible for any of the alleged incidents (except as to a grievance allegedly given to Fox as discussed above). Further, Plaintiff has not shown that these Defendants were

---

[3] Joey Johnson states that review of Plaintiff's file shows that Plaintiff did not access the grievance system concerning any of the allegations set forth in his Complaint. Johnson Aff.

9

deliberately indifferent to, or tacitly authorized, any of the alleged actions or inactions. Thus, Plaintiff fails to show that Defendants Fox, Gustwaite, Robertson, or Brown were liable on a theory of respondent superior or supervisory liability.

    5.    <u>Immunity</u>

Defendants argue that they are entitled to qualified immunity in their individual capacities.[4] The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this

---

[4] Defendants also argue that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. See <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989). A determination that the state treasury will be liable for judgment is largely, if not wholly, dispositive of entitlement to Eleventh Amendment immunity. See <u>Gray v. Laws</u>, 51 F.3d 426 (4th Cir. 1995). There is insufficient information provided to determine whether Defendants are entitled to Eleventh Amendment immunity.

>[clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

<u>Wiley v. Doory</u>, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), <u>cert</u>. <u>denied</u>, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

6. <u>State Claims</u>

Plaintiff may also be attempting to assert claims under South Carolina law. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

## CONCLUSION

Based upon review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 16) be granted.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

October 3, 2005
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201